# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lonnie Spellman, : 
            Petitioner : 
             : 
       v. : No. 947 C.D. 2021
             : Submitted: July 15, 2022
Pennsylvania Parole Board, : 
            Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge

**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER     FILED:  **September 15, 2022**


Lonnie Spellman petitions for review of the August 5, 2021 Order of the Pennsylvania Parole Board (Board) that determined sufficient evidence was presented at Spellman's January 10, 2014 evidentiary hearing to deny him credit for the time he spent at liberty on parole at the Joseph E. Coleman Center (Coleman Hall), a community corrections facility, and, further, that counsel was not ineffective in his representation of Spellman. Spellman is represented by appointed counsel, Kent D. Watkins, Esquire (Counsel), of the Schuylkill County Public Defender's Office. Counsel has filed an Application to Withdraw as Counsel (Application to Withdraw) and a No-Merit Letter, asserting that Spellman's challenge to the Board's determination is meritless. Additionally, Spellman has filed an Application for Appointment of Conflict Counsel (Conflict Counsel Application),[1] claiming, *inter*

---

[1] Pursuant to our January 7, 2022 Order, Spellman's Conflict Counsel Application will be decided along with the Application to Withdraw.

*alia*, that Counsel has not been helpful in his representation of Spellman. (Conflict Counsel Application ¶ 4.) Following review, we grant Counsel's Application to Withdraw, affirm the Board's Order, and dismiss Spellman's Conflict Counsel Application as moot.

## I.     BACKGROUND

This case comes before us following our decision in *Spellman v. Pennsylvania Parole Board* (Pa. Cmwlth., No. 606 C.D. 2020, filed July 19, 2021) (*Spellman I*). There, Spellman sought review of the Board's May 27, 2020 order that dismissed, as untimely, his pro se administrative appeal of the Board's February 28, 2014 decision, which denied him credit on his original sentence for the time he spent at liberty on parole at Coleman Hall. *Spellman I*, slip op. at 1. In his petition for review to this Court, Spellman alleged that the Board erred in calculating his maximum sentence date by failing to credit him with the time he spent at liberty on parole at Coleman Hall, that he filed yearly appeals of the Board's February 28, 2014 decision up until the Board finally responded in its May 27, 2020 decision, and that he had a conflict with Counsel prior to the evidentiary hearing but had no other alternative but to proceed with Counsel. *Id.*, slip op. at 4. Counsel[2] filed an application to withdraw as counsel and a No-Merit Letter, in which he concluded that Spellman's administrative appeal of the Board's February 28, 2014 decision was untimely filed with the Board on March 6, 2020; thus, his appeal to this Court was meritless. *Id.*, slip op. at 4-5. Spellman also filed a brief on his own behalf, alleging that Counsel was supposed to file an administrative appeal in 2014 but did not do so. As such, Spellman explained he filed a timely appeal on his own behalf on March 6, 2014.

_____

[2] To clarify, Counsel in this matter also represented Spellman at the 2014 evidentiary hearing and in *Spellman I*.

2

As support, Spellman attached to his brief the administrative remedies form he claimed to have filed with the Board in 2014, and he reiterated his claim that he filed yearly appeals to the Board, which the Board ignored. *Id.*, slip op. at 6-7. Complicating the matter further, the Board submitted a certified record that was nine pages in length, which left the Court unable to verify Spellman's claims that, if true, could have warranted *nunc pro tunc* relief.[3] *Id.*, slip op. at 9-10. Accordingly, we denied the application to withdraw as counsel, vacated the Board's May 27, 2020 order, and remanded the matter to the Board to conduct an evidentiary hearing to determine: (1) whether Spellman filed yearly appeals to the Board from 2014 through 2020; (2) whether Spellman was deprived of the effective assistance of counsel; and (3) whether either of Spellman's claims, if true, warranted *nunc pro tunc* relief, such that the Board must accept his untimely appeal and consider its merit. *Id.*, slip op. at 10-11.

On remand, the Board did not conduct an evidentiary hearing regarding *nunc pro tunc* relief per our instruction in *Spellman I*. Instead, the Board issued its August 5, 2021 decision, in which it concluded that it erred by categorizing Spellman's March 18, 2014 (postmarked March 14, 2014), pro se administrative appeal as an improper challenge to a parole denial.[4] (Certified Record (C.R.) at 182-83.) The Board found that Spellman's March 18, 2014 appeal was actually a timely appeal of its decision dated February 28, 2014. (*Id.* at 182.) The Board therefore indicated that it would address the substantive issues raised by Spellman in his March 18, 2014 appeal. (*Id.*) Ultimately, the Board rejected Spellman's claims of error regarding

---

[3] In the present case, the Certified Record has burgeoned to 184 pages.

[4] Specifically, by letter dated April 29, 2014, the Board deemed Spellman's appeal as a challenge to the Board's refusal to grant him parole and noted that a parolee has no right to appeal a decision denying parole. (Certified Record (C.R.) at 180.)

credit for his time spent at liberty at Coleman Hall and Counsel's alleged ineffectiveness, (*id.* at 182-83), and Spellman, through Counsel, petitioned this Court for review of the Board's August 5, 2021 Order.

By way of background, on July 23, 1996, Spellman was convicted of third-degree murder in the Court of Common Pleas of Philadelphia County and sentenced to 10 to 20 years in a state correctional institution (SCI). (C.R. at 1.) At that time, his minimum sentence date was July 28, 2005, and his maximum sentence date was July 28, 2015. (*Id.* at 2.) On June 18, 2007, Spellman was released on parole to Coleman Hall. (*Id.* at 13.) On January 14, 2008, he was given a medical pass for hospital treatment. (*Id.* at 19.) He was released by the hospital that same day but failed to return to Coleman Hall, as he went to his wife's residence instead to recover from his surgery. (*Id.*) Spellman was declared delinquent and eventually returned to the Board's custody on January 17, 2008, without incident. (*Id.* at 17, 19.) That same day, the Board sanctioned Spellman to the halfway back program at Coleman Hall, which he successfully completed on June 2, 2008. (*Id.* at 19, 40.) He was thereafter released to an approved home plan. (*Id.* at 40.)

On July 31, 2009, Spellman was arrested by the Philadelphia Police Department on several firearm charges. (C.R. at 24, 26.) On February 18, 2010, he was convicted of possession of a firearm prohibited; possession of a firearm without a license; and carrying a firearm in public in Philadelphia. (*Id.* at 42, 80-81.) He received a total sentence of 5 to 10 years in an SCI. (*Id.*)

As a result of the new criminal convictions, on May 21, 2010, the Board held a panel revocation hearing. (C.R. at 43.) Following the hearing, by order mailed on June 8, 2010, the Board recommitted Spellman to an SCI as a convicted parole violator (CPV) to serve 48 months' backtime and recalculated his maximum

4

sentence date as January 25, 2018. (*Id.* at 89.) Spellman filed an appeal, challenging, *inter alia*,[5] the Board's recalculation of his maximum sentence date without credit for the time he spent at liberty on parole at Coleman Hall. (*Id.* at 94-95.) By order mailed on September 30, 2010, the Board affirmed its decision as to the revocation of Spellman's parole and granted Spellman an evidentiary hearing to determine whether he was entitled to credit for the time he spent at Coleman Hall. (*Id.* at 99-100.) Specifically, the Board indicated that two periods of time would be addressed at the hearing: July 28, 2007, to January 14, 2008, and January 17, 2008, to June 2, 2008. (*Id.* at 100.)

The evidentiary hearing was held on January 10, 2014,[6] and Counsel entered his appearance on Spellman's behalf on the same date. (C.R. at 113, 129.) At the hearing, Counsel explained that Spellman was paroled to Coleman Hall on June 18, 2007, but was only requesting credit beginning on July 28, 2007, because initially he was permitted to leave Coleman Hall without an escort for three hours per day to look for work. (*Id.* at 136, 139.)

Spellman testified to the following. He first arrived at Coleman Hall on June 18, 2007. (C.R. at 137-38.) The front of the facility is not fenced in, but the yard area behind the building has a barbed wire fence around it. (*Id.* at 138.) To enter the facility, he would ring a bell, the door would open electronically, and he would go through a turnstile to another door that staff would then open for him. (*Id.* at 138-39.) He explained that everyone must go through a metal detector and submit to a "pat search." (*Id.* at 139.) Spellman also noted that staff at the facility do not carry

---

[5] All other claims of error raised by Spellman were rejected by the Board.

[6] It appears that the evidentiary hearing was delayed due to three continuances requested by Spellman: the first was in 2010, in order for Spellman to secure an attorney, (C.R. at 106); the second was in 2011, in order for Spellman to secure a private attorney, (*id.* at 107); and the third was in 2012, wherein Spellman requested a stay pending a district court appeal, (*id.* at 103-04).

weapons. (*Id.*) Beginning on July 28, 2007, to January 14, 2008, he was required to look for jobs online and could only leave the building with an escort, including to go to appointments. (*Id.* at 140.) Spellman slept in a room with approximately six other people. (*Id.*) When asked if there were bars on the windows, Spellman stated, "I don't know [if] they were actually windows. They were just Plexiglas or [something else]. But there is no seeing in or seeing out." (*Id.* at 141.) He clarified he was not locked in his room and could go in and out as he pleased, but the hallway outside his room was locked. (*Id.*) Spellman further testified that if he left the facility without permission, it would be considered an escape. (*Id.*) Further, he stated there was a blackout period during which he was not allowed to go anywhere or see anyone for the first month he was at the facility. (*Id.* at 142-43.) He admitted that after that period, he was permitted to make collect calls and have visits in the cafeteria. (*Id.* at 142.)

Regarding the period from January 17, 2008, when he returned to Coleman Hall following his infraction, to June 2, 2008, Spellman testified that he was "on the halfway back" program. (C.R. at 143.) He explained that if he got in any trouble during this "halfway back" period, he would be returned to prison. (*Id.*) Spellman was only permitted to leave the building during this period with an escort for doctor's appointments. (*Id.*) He was not permitted to leave to look for work or to do anything else. (*Id.* at 143-44.) He acknowledged, however, that he was permitted to go into the yard that has the barbed wire fence. (*Id.* at 144.)

On cross-examination, Spellman testified to the following. After his first month at the facility, he was permitted to leave the facility only to go to doctor's appointments with two escorts and to register for welfare, and that a van was provided to transport the residents to appointments. (C.R. at 145-46.) When he went

6

to doctor's appointments, he was escorted there by two escorts; however, one came inside with him and waited outside the doctor's office while he was alone with the doctor and the other stayed outside. (*Id.* at 146-47.) He was also alone at one point while applying for welfare. (*Id.*) Spellman further testified that he went to a mental health evaluation at a Veterans Administration (VA) hospital unaccompanied by Coleman Hall personnel, but he clarified that he was escorted by a staff member of the hospital. (*Id.* at 148-49.) During the day at Coleman Hall, he was free to roam around the housing unit. (*Id.* at 148.)

Parole Agent Mike Hernandez presented one witness, the Director of Classification at Coleman Hall (Director), who testified to the following. Coleman Hall is not a state-run facility and state correctional officers do not work there. (C.R. at 151.) Parolees are permitted to leave the facility unescorted for criminal registration, job searches, employment, religious services, and on social passes when earned. (*Id.* at 151-52.) Director explained that the doors inside the facility magnetically lock for security reasons in order to keep the areas where staff are working inaccessible to the parolees in the housing units, and that the doors lock at times to accommodate staff members who are in the hallways. (*Id.* at 152.) The staff does not restrain residents and would face disciplinary action if physical force was used. (*Id.* at 153.) Residents are allowed to leave the facility any time without any restraints, but if a parolee leaves without authorization or fails to return to the facility, it is reported to his parole agent, not local police. (*Id.* at 153-54.) Director also explained that the blackout period is really an orientation period for new residents, during which they must, *inter alia*, secure certain documents mandated by parole authorities, which they are permitted to do without an escort. (*Id.* at 154-55.)

On cross-examination, Director testified that he has worked at Coleman Hall for approximately 10 years. (C.R. at 155.) Thus, he was familiar with the halfway back program in 2007 and 2008 and testified that there was never a time when parolees in the program were required to have an escort in order to leave the facility. (*Id.* at 155-56.) He explained that while parolees in the halfway back program were permitted to leave the facility unescorted, Coleman Hall did offer transportation to them because most parolees do not have the means to get to appointments without assistance. (*Id.* at 156.)

Spellman then interrupted Director's testimony to state that whenever a parolee enters or leaves the facility, he must sign in or sign out at a kiosk. (C.R. at 156.) Spellman then claimed that the "kiosk information" would prove he was not permitted to come and go as he pleased during the challenged time periods. (*Id.*) The hearing examiner informed Spellman that the burden was on him to request and produce these records and asked if he so requested them, to which Spellman stated that he did not request the records. (*Id.* at 156-57.) Director also responded that he did not have such records with him. (*Id.* at 157.) The only records Director had with him showed that Spellman entered Coleman Hall on June 18, 2007, absconded on January 15, 2008, reentered Coleman Hall on January 17, 2008, and was released on May 30, 2008.[7] (*Id.* at 158-59.) Director finally testified, in response to questions from Spellman, that the supervision rules for pre-release inmates and parolees are different, as parole instructions supersede any of the facility's guidelines, but that the security procedures are the same for both. (*Id.* at 160.)

By decision mailed on February 28, 2014, the Board advised that it held an evidentiary hearing pursuant to *Cox v. Pennsylvania Board of Probation and Parole*,

[7] The Board previously found Spellman was at Coleman Hall through June 2, 2008. (C.R. at 100.)

8

493 A.2d 680 (Pa. 1985), to determine whether the conditions at Coleman Hall were the functional equivalent of incarceration, which would entitle Spellman to credit for the time he spent on parole at Coleman Hall. The Board found that Coleman Hall was not a secured facility; Spellman was in no way detained or prohibited from leaving the facility; the facility's "doors did not restrict unencumbered departure"; and residents could leave the facility unescorted with permission. (C.R. at 168-69, Findings of Fact ¶¶ 1-3.) The Board concluded that the restrictions on Spellman's liberty while he resided at Coleman Hall were not the equivalent of incarceration, and, therefore, Spellman did not meet his burden of proof entitling him to credit under *Cox*, 493 A.2d at 683. (*Id.* at 169, Conclusions of Law ¶¶ 2-4.) Accordingly, the Board denied Spellman credit for the time he spent at Coleman Hall. (*Id.* at 169.)

Spellman filed a pro se administrative remedies form, with an attachment, on March 18, 2014 (postmarked on March 14, 2014). (C.R. at 170-73.) Therein, he challenged, among other things, the Board's decision to deny him credit for the time he spent at Coleman Hall and claimed that "the [B]oard could have halted the hearing when [he] requested a copy of the 'sign-out log' as proof he was confined to the grounds." (*Id.* at 170.) In addition, Spellman stated, "[t]here was already conflict between [Spellman and] the only counsel[, i.e., Counsel,] used for [r]evocation hearings, who did not subpoena the log . . . [or] request a continuance to . . . subpoena the log." (*Id.* at 170-71.)

Following this Court's remand in *Spellman I*, the Board issued a response to Spellman's March 18, 2014 administrative appeal on August 5, 2021. (C.R. at 182-83.) The Board found that Director's credible testimony established that Spellman's time spent at Coleman Hall was not akin to incarceration, and that Spellman therefore failed to meet his burden of proving he was entitled to such credit. (*Id.* at

9

182.) Noting that to establish ineffective assistance of counsel, it must be shown that Counsel's deficient performance prejudiced Spellman's defense, the Board determined that Spellman's claim that Counsel failed to subpoena the sign-out log prior to the hearing or that the hearing should have been halted so he could retrieve the logs did not establish the prejudice necessary to show ineffectiveness of counsel. (*Id.*) Accordingly, the Board affirmed its February 28, 2014 decision.

On August 27, 2021, Spellman, through Counsel, filed a petition for review in this Court,[8] asserting that the Board's order revoking Spellman's parole constitutes an error of law and a violation of Spellman's constitutional rights, and is not supported by substantial evidence. (Petition for Review ¶ 5.) Second, Spellman claims that the Board failed to give him credit for all the time he served exclusively on the Board's warrant. (*Id.* ¶ 6.) We note that neither of these issues relate to the challenges Spellman raised before the Board in his pro se administrative appeal, *i.e.*, that the Board should have continued the evidentiary hearing so he could subpoena the sign-out log or that Counsel was ineffective because he did not subpoena the sign-out log or seek a continuance to do so.

On November 18, 2021, Counsel filed the instant Application to Withdraw, asserting that the Spellman's petition for review lacks merit. In support, Counsel also filed the No-Merit Letter, which he sent to Spellman along with the Application to Withdraw, detailing his review of the Certified Record and relevant law. After summarizing the newly available factual and procedural history of this matter, Counsel addressed Spellman's issues. Specifically, Counsel addressed the evidence

---

[8] Our standard of review in parole revocation cases "is limited to determining whether the Board committed a constitutional violation or an error of law and whether the findings of fact are supported by substantial evidence." *Lee v. Pa. Bd. of Prob. & Parole*, 885 A.2d 634, 637 (Pa. Cmwlth. 2005).

presented at the 2014 evidentiary hearing, citing caselaw relevant to determining whether the restrictions at Coleman Hall were the equivalent of incarceration. (No-Merit Letter at 5, 8-11.) Counsel then concludes that the evidence supported the Board's determination that the time Spellman spent at Coleman Hall was not the equivalent of incarceration. (*Id.* at 10-11.) As to Spellman's ineffective assistance of counsel claim, Counsel states that the logs had no evidentiary value because the fact that Spellman "could sign out and leave the facility would not support his burden of proof. Counsel made the decision not to obtain the record because it would have no bearing on the decision [of] whether or not the facility was 'equivalent to incarceration[.]'" (*Id.* at 11.) Thus, Counsel concluded that the petition for review lacks merit. This matter is now ready for disposition.

## II. DISCUSSION

### a. No-Merit Letter

Before appointed counsel may withdraw from representation in a case in which the right to counsel does not derive from the United States Constitution, such as here, the no-merit letter must contain: (1) the nature and extent of counsel's review; (2) the issues the petitioner wishes to raise; and (3) counsel's analysis in concluding that the petitioner's appeal is without merit. *Commonwealth v. Turner*, 544 A.2d 927, 928 (Pa. 1988); *Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 25 (Pa. Cmwlth. 2009). In addition, counsel must send the petitioner a copy of the no-merit letter, "a copy of counsel's petition to withdraw," and a statement advising the petitioner of his right to proceed with new counsel or pro se. *Zerby v. Shanon*, 964 A.2d 956, 960 (Pa. Cmwlth. 2009) (quoting *Commonwealth v. Wrecks*, 931 A.2d

11

717, 720-21 (Pa. Super. 2007)). Once counsel satisfies the procedural requirements of *Turner*, this Court will "conduct its own review of the merits of the case." *Id.*

Here Counsel has satisfied the procedural requirements of *Turner*. Counsel has explained the nature of his review of the record, addressed the issues of whether Coleman Hall was akin to incarceration and whether the logs were relevant, and provided his analysis. He has also provided Spellman with a copy of the Application to Withdraw and the No-Merit Letter, as well as this Court's November 22, 2021 order, which advised Spellman of his right to proceed with new counsel or file a brief on his own behalf. As such, we will now conduct an independent review of the merits.

#### b. *Equivalent Incarceration*

We begin with Spellman's claim that he is entitled to credit on his original sentence for the periods he resided at Coleman Hall because it was sufficiently restrictive to equal incarceration. Section 6138(a)(2) of the Prisons and Parole Code (Parole Code), 61 Pa.C.S. § 6138(a)(2), provides that a parolee who is recommitted as a CPV "shall be recommitted to serve the remainder of the term which the offender would have been compelled to serve had the parole not been granted and . . . shall be given no credit for the time at liberty on parole." The Parole Code does not define "at liberty on parole." However, our Supreme Court has held that "at liberty" does not mean freedom from all types of confinement. *Cox*, 493 A.2d at 683. The law is well settled that a parolee may be entitled to backtime credit for time spent at liberty on parole in a residential facility where the parolee demonstrates that the residential facility's characteristics are equivalent to incarceration. *Id.* In *Cox*, our Supreme Court explained that the parolee bears the burden of proving the restrictions on his liberty were the equivalent of incarceration. *Id.* We have stated

12

that the most important factors in determining whether a program is sufficiently restrictive to be equivalent to incarceration are: (1) whether the resident is locked in; and (2) whether the resident may leave without being physically restrained. *Medina v. Pa. Bd. of Prob. & Parole*, 120 A.3d 1116, 1120-21 (Pa. Cmwlth. 2015). Furthermore, we have stated:

> Facilities are not prison-like if they lack fences or have fences with gates that open from the inside; have doors and windows locked from the outside, not the inside, to prevent entry not exit; lack guards stationed to prevent residents from leaving; and do not attempt to use physical force by staff members to stop an inpatient from leaving.

*Harden v. Pa. Bd. of Prob. & Parole*, 980 A.2d 691, 699 (Pa. Cmwlth. 2009) (*en banc*). We have also considered whether a parolee who leaves a facility would be considered an escapee or a parole absconder. *Meehan v. Pa. Bd. of Prob. & Parole*, 808 A.2d 313, 317 (Pa. Cmwlth. 2002).

Each claim for credit is to be evaluated on a case-by-case basis. *Torres v. Pa. Bd. of Prob. & Parole*, 861 A.2d 394, 397 (Pa. Cmwlth. 2004). We have consistently held that where the Board determines that parolees failed to meet their burden of proving that the restrictions on their liberty were the equivalent of incarceration, they are not entitled to credit for periods in which they resided in community corrections centers/facilities or inpatient treatment programs. *Medina*, 120 A.3d at 1119. "[W]e will not interfere with the Board's determination . . . unless it acts arbitrarily or plainly abuses its discretion." *Cox*, 493 A.2d at 683.

Counsel contends in his No-Merit Letter that this issue is meritless, and that the Board did not abuse its discretion in denying Spellman credit in this case, because Spellman did not establish that the characteristics at Coleman Hall were the

13

functional equivalent of incarceration. (No-Merit Letter at 10-11.) Based on our caselaw, Counsel is correct.

In the present case, the Board credited the testimony of Director. Director testified that Spellman had free movement inside the facility,[9] was permitted to leave the facility unescorted to approved locations, would not be restrained by staff if he attempted to leave without approval, and would not be charged as an escapee if he left the facility without permission, but, rather, would be considered a parole absconder.[10] (C.R. at 151-56.) Spellman's own testimony confirms that the entrance to the facility was not gated,[11] he was free to roam around the housing unit of Coleman Hall during the day, and he was able to attend an evaluation at the VA hospital on his own without a Coleman Hall escort. (*Id*. at 138, 141, 148-49.) These findings amply support the Board's determination that Spellman is not entitled to credit under *Cox* for the period he resided at Coleman Hall because the conditions there were not sufficiently restrictive to be considered the equivalent of incarceration. Accordingly, we conclude that the Board did not act arbitrarily or plainly abuse its discretion when it denied Spellman credit on his original sentence for the periods he resided at Coleman Hall. This issue is, therefore, without merit.

---

[9] While there were times parolees did not have access to the hallways, Director testified that this was limited to times when staff members were in the hallways. (C.R. at 152.) There was no showing that this was pervasive.

[10] Spellman claimed that he would be charged with escape if he left the facility without permission. (C.R. at 141.) This is belied by the fact that Spellman was deemed an absconder, not an escapee, when he failed to return from a medical appointment on January 14, 2008.

[11] Spellman testified that the front door was locked to outsiders, and that he had to press a bell to enter. (C.R. at 138-39.) However, he did not claim that the locking system prevented those inside the facility from exiting via the door.

### c. Ineffective Assistance of Counsel

Despite the evidence that the characteristics of Coleman Hall do not constitute restrictions on Spellman's liberty sufficient to warrant credit on his original sentence, Spellman claims that the sign-out/sign-in logs would establish that his freedom was restricted. Basically, he claims he could not leave Coleman Hall for any reason other than for doctor's appointments, particularly when he was in the halfway back program, and the logs would establish this. Thus, he claims that the Board should have continued the hearing in order for him the retrieve the logs or, alternatively, that Counsel should have subpoenaed the logs or sought a continuance.

A claim of ineffective assistance of counsel

> has two parts, both of which must be shown for a parolee to be entitled to relief. The first is a showing that the parolee's counsel made errors so serious that counsel was not functioning as "counsel" guaranteed under [the] law. The second is that the parolee must show counsel's deficient performance prejudiced his defense.

*LaCourt v. Pa. Bd. of Prob. & Parole*, 488 A.2d 70, 75 (Pa. Cmwlth. 1985). "To show prejudice sufficient to satisfy the second requirement, a parolee must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *Id.* In addition, it is the parolee who bears the burden of showing counsel's ineffectiveness. *Vereen v. Pa. Bd. of Prob. & Parole*, 515 A.2d 637, 640 (Pa. Cmwlth. 1986).

This case is complicated by the fact that Counsel herein is arguing against his own ineffectiveness. Generally, in a case where ineffectiveness of counsel is raised, or when counsel maintains that he or she, indeed, was ineffective, the case should be remanded and new counsel should be appointed, "except (1) where[] it is clear from the record that counsel was ineffective or (2) **where it is clear from the record**

15

**that the ineffectiveness claim is meritless**." *Commonwealth v. Johnson*, 771 A.2d 751, 756 (Pa. 2001) (emphasis added).

In his No-Merit Letter, Counsel submits that the logs had no evidentiary value because the fact that Spellman "could sign out and leave the facility would not support his burden of proof. Counsel made the decision not to obtain the record because it would have no bearing on the decision [of] whether or not the facility was 'equivalent to incarceration[.]'" (No-Merit Letter at 11.) We, again, agree with Counsel.

Here, Spellman bore the burden of proving Counsel's ineffectiveness in this case but has failed to satisfy either part of the *LaCourt* test, both of which are required, to be entitled to relief on his ineffective assistance of counsel claim. First, Spellman has not shown that Counsel's purported error in not subpoenaing the logs or requesting a continuance to obtain such logs was so serious that Counsel was not functioning as "counsel" guaranteed by the law. To the contrary, Counsel has explained that he made a conscious decision, as Spellman's counsel, not to subpoena the logs because they would have no bearing whatsoever on Spellman's burden of proof under *Cox*. We cannot say that Counsel's decision in this regard was so serious that he was not functioning as "counsel" guaranteed under the law. Second, Spellman has not shown a reasonable probability that, but for Counsel's deficient performance, the result of the *Cox* proceeding before the Board would have been different. Spellman also acknowledged that all the logs would show was that he never signed in or out of Coleman Hall during the disputed timeframes. (*Id.* at 156.) That Spellman may not have signed in or out of Coleman Hall during the disputed timeframes does not show whether his time spent at the facility was equivalent to incarceration. Moreover, the logs would not negate the plethora of other record

16

evidence, found credible by the Board, that Spellman had free movement inside the facility, was permitted to leave the facility unescorted to approved locations, would not be restrained by staff if he attempted to leave without permission, and would not be charged as an escapee if he left the facility without permission, but, rather, would be considered a parole absconder. (*Id*. at 151-56.) Under the standards in our precedent, it is clear from the record in this case that Spellman's ineffective assistance of counsel claim is meritless.

### III. CONCLUSION

Because Counsel satisfied the procedural requirements of *Turner,* and the Board did not act arbitrarily or abuse its discretion in denying Spellman credit on his original sentence for the periods he resided at Coleman Hall, we grant Counsel's Application to Withdraw and affirm the Board's Order. Moreover, as explained above, Spellman's ineffective assistance of counsel claim is not supported by the law. Concluding that the issues raised on appeal to this Court have no merit, we need not address the merits of Spellman's Conflict Counsel Application and, therefore, dismiss it as moot.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lonnie Spellman,          :
        Petitioner     :
                   :
     v.              :   No. 947 C.D. 2021
                   :
Pennsylvania Parole Board,    :
        Respondent   :

## O R D E R

AND NOW, this 15th day of September, 2022, the Application to Withdraw as Counsel filed by Kent D. Watkins, Esquire is **GRANTED**, the Pennsylvania Parole Board's August 5, 2021 Order is **AFFIRMED**, and Lonnie Spellman's Application for Appointment of Conflict Counsel is **DISMISSED** as moot.

_____
**RENÉE COHN JUBELIRER,** President Judge